## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUSTIN LILLY, individually and on behalf
of all others similarly situated,

       *Plaintiff*,

   v.

RYOBI TECHNOLOGIES, INC., and TTI
OUTDOOR POWER EQUIPMENT, INC.,

       *Defendants*.

Case No.:


**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Justin Lilly ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Defendants, Ryobi Technologies, Inc. ("Ryobi") and TTI Outdoor Power Equipment, Inc. ("TTI") (collectively "Defendants"), and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit as an individual who purchased Defendant Ryobi's 40V Push Mower (hereinafter "Products" or "Mower") for normal household use.

2. Defendant TTI Outdoor Power Equipment has issued a recall for certain RYOBI 40-Volt Brushless 21" Cordless Walk-Behind Mowers due to a fire hazard.

3. Unfortunately, the Products are defective because they can catch fire.[1] The defect originates from the mower's battery terminal, where a push-on connector inside the powerhead can

---

[1] https://www.cpsc.gov/Recalls/2025/TTI-Outdoor-Power-Equipment-Recalls-RYOBI-Battery-Powered-Mowers-Due-to-Fire-Hazard

overheat, posing a fire risk.

4.      TTI, a Hong Kong-based company with its American operations headquartered in Anderson, South Carolina, has received 97 reports of overheating, including five fires and two minor burn injuries.

5.      Consumers are advised to stop using the recalled mowers immediately and contact TTI for instructions on how to disable the mower and receive a free replacement.

6.      The recall involves approximately 217,500 units in the U.S. and 28,400 in Canada.

7.      Each of the Products is manufactured, distributed, marketed, and sold by Defendants to consumers across the United States. The Products are sold at sold at Home Depot, Direct Tools Factory Outlet, and online from February 2021 through January 2025.

8.      The mowers have a black cutting deck with gray top housing along with a black bag with "RYOBI" printed on it.

9.      The recall only includes model numbers RY401014BTLUS, RY401014US, RY401140US, RY401015BTLUS, RY401015US, RY401150US, RY401140US-Y, RY401150US-Y, RY401020, and RY401200 with the following serial numbers: KC21032D010001 - KC21327N999999. The model and serial numbers can be found on the mowers inside the green mower housing.[2]

10.     To process the recall, consumers must cut the handle wire cable in two places, take photos of the cuts and the serial number, and submit them to TTI.

11.     Once verified, Defendants promise to ship a replacement mower. The replacement model is expected to be feature-identical.

12.     Many users have reported long hold times when calling TTI, but some have

---

[2] *Id.*

successfully used the online contact form for faster responses but still having to respond back and forth to get finality.

13.    The replacement mowers are expected to be "tool-only," meaning they will not include batteries or chargers. Seemingly, the Defendants believe the battery and charger used prior will work with the replacement mower.

14.    TTI requires proof of ownership, such as the serial number or purchase receipt, to process the recall, leaving some consumers potentially without recourse.

15.    The Product is defective because it can overheat and catch fire. Despite this known fire risk, Defendants represented that the Products were safe and effective for their intended use.

16.    Other manufacturers formulate, produce, and sell non-defective Mowers with formulations and production methods that do not cause the Products to catch fire, which is evidence that the fire risk inherent with Defendants' Products is demonstrably avoidable.

17.    Feasible alternative formulations, designs, and materials are currently available and were available to Defendants at the time the Products were formulated, designed, and manufactured.

18.    Plaintiff purchased the Product, while lacking the knowledge that Product could catch fire, thus causing serious harm to those who use such Products.

19.    All consumers who purchased the worthless and dangerous Products have suffered losses.

20.    As a result of the above losses, Plaintiff seeks damages and equitable remedies on behalf of himself and the putative class.

**PARTIES**

21.    Plaintiff Justin Lilly is a resident and citizen of Baton Rouge, Louisiana, situated within East Baton Rouge Parish.

3

22.     Defendant Ryobi Technologies, Inc. is a US corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1428 Pearman Dairy Road, Anderson, SC 29625.

23.     Defendant TTI Outdoor Power Equipment, Inc. is a US corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 13135 West Lisbon Road, Brookfield, Wisconsin 53005.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d).

25.     Defendant sells its products internationally, throughout the United States and within this judicial district.  This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of the Product throughout this District. See *Mallory v. Norfolk Southern Railway Co.*, 143 S.Ct. 2028, 600 U.S. 122, 216 L.Ed. 815 (2023).

26.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that Defendant sells and distributes their Products throughout the United States and within this District.

## FACTUAL ALLEGATIONS

27.     Defendant TTI Outdoor Power Equipment has issued a recall for certain RYOBI 40-Volt Brushless 21" Cordless Walk-Behind Mowers due to a fire hazard.

28.     Defendant have received reports of incidents involving the Mowers including overheating,

melting, smoking and fire. These included 97 reports of overheating while the mower was in use, five reports of fires, and two minor burn injuries.

29.    The Consumer Product Safety Commission issued a recall for the defective Products on February 06, 2025.[3]

30.    The recall includes model numbers RY401014BTLUS, RY401014US, RY401140US, RY401015BTLUS, RY401015US, RY401150US, RY401140US-Y, RY401150US-Y, RY401020, and RY401200 with the following serial numbers: KC21032D010001 - KC21327N999999.

31.    Plaintiff purchased his Ryobi RY401140US Brushless 21" Cordless Walk Behind Mower from the Home Depot in Baton Rouge, Louisiana. .

32.    At this time Plaintiff still has the defective Product.

33.    Plaintiff experienced overheating and power loss to his Product during the course of its use.

### *Defendants' Misrepresentations and Omissions are Actionable*

34.    Plaintiff bargained for a Product that was safe to use. Defendants' fire prone Products were, and are, unsafe. As a result of the risk of fire, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that the Defendants sold them a product that could overheat and spontaneously ignite or catch fire. This dangerous fire risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

35.    The Products are not fit for their intended use by humans as they expose consumers to a fire hazard. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to the Defendants' conduct, and injunctive relief.

36.    Plaintiff seeks to recover damages because the Products are adulterated, defective,

---

[3] *Id.*

worthless, and unfit for human use due to the risk of catching fire.

37.    The Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

38.    Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of the Products overheating and catching on fire.

39.    Plaintiff bought a Ryobi Mower for personal use.

40.    On the date of the Products' recall Plaintiff was in possession of the Defendants' Product. Plaintiff intended to purchase a Product that would be safe for normal use, but instead was sold a dangerous fire hazard that eventually overheated and melted.

41.    If Plaintiff had been aware of the risk fire in the Products, he would not have purchased the Product or would have paid significantly less.

42.    As a result of the Defendants' actions, Plaintiff has incurred damages.

43.    If the Products and packaging were reformulated to be safe and avoid overheating and sudden ignition, Plaintiff would choose to purchase the Products again in the future.

## **CLASS ACTION ALLEGATIONS**

44.    Plaintiff bring this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

**Pennsylvania Subclass:** All persons within Pennsylvania who purchased the Products within the applicable statute of limitations.

45.    The Nationwide Class and Pennsylvania Subclass shall collectively be referred to herein as

the "Classes."

46. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

47. Excluded from the Class and Sub-classes are Defendants, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

48. The particular members of the (i) Nationwide Class and ii) Pennsylvania Sub-class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates and agents and from public records.

49. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50. The proposed Classes are so numerous that the joinder of all members is impracticable.

51. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

52. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Classes are so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Members of the Classes may be notified of the pendency of this action

by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

53. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class, because, inter alia, all Class and Sub-class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class and Sub-class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class and their respective Sub-class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

54. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class and Sub-class. Plaintiff will fairly and adequately represent and protect the interest of the Class and Sub-class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interest antagonistic to those of the Class or Sub-class, and Defendants have no defenses unique to Plaintiff.

55. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class and Sub-class Members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or

one of the Sub-class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class or Sub-class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

56.     Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Sub-class, and other equitable relief on grounds generally applicable to the entire Class and the Sub-class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class and the Sub-class are certified, Defendants will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Sub-class will have suffered damages. Unless a Class-wide injunction is issued, Defendants may continue to benefit from these alleged violations, and the members of the Class and Sub-class may continue to be unfairly treated.

57.     Defendants have acted and refused to act on grounds generally applicable to the Class and the Sub-class, making final injunctive relief appropriate with respect to the Class as a whole.

58.     **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a.   Whether Defendants' wrongful retention of Plaintiff and Class Members' payments was an act of conversion;

b.   Whether Defendants breached its contract with the Plaintiff by failing to refund Plaintiff's payments upon the announcement of the recall;

c.   Whether Defendants' retention of Plaintiff and Class Members' payments was a violation of Defendants duty of good faith and fair dealing;

d.   Whether Defendants were unjustly enriched as a result of retaining and refusing to refund Plaintiff and Class Members' payments upon the recall announcement;

e.   The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

f.   Whether Plaintiff and the Class and Sub-class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

59.   Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

60.   Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

61.   Plaintiff, and the other members of the Classes, conferred a monetary benefit upon Defendants LLC by purchasing the defective Mowers. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe and reliable.

62.   Defendants voluntarily accepted and retained these benefits. Defendants manufactured, marketed and distributed the defective Mowers without adequate warnings of the known

defect.

63. The benefit was obtained unlawfully by both Defendants by distributing a Product prone to catching fire. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

64. The Defendants received revenues from the sales of these defective Mowers at the expense of Plaintiff and the Classes, who would not have purchased the Mowers had they been aware of the defect. The labeling and marketing of the Products by Defendants were misleading and caused direct economic harm and risk of injury to Plaintiff and the Class.

65. Defendants have been unjustly enriched by retaining the revenues derived from the sales of defective batteries. Retention of these revenues is inequitable because Defendants failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

66. Plaintiff and the members of the Classes seek restitution of the monies conferred upon Defendants as a result of their unjust enrichment. Defendants should be required to disgorge the profits obtained from the sale of defective batteries and provide restitution to Plaintiff and the Classes, as ordered by the Court.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

67. Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

68. Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

69. Plaintiff and each member of the Classes formed a contract with Defendants at the time

they purchased the Products.

70. The terms of the contract included express warranties created by Defendants through affirmative representations, advertising, packaging, labeling, and marketing of the defective Mowers.

71. Defendants, through these marketing and advertising efforts, expressly warranted that the Products were safe, effective, and fit for their intended purpose. These warranties became part of the basis of the bargain between Plaintiff, Class Members, and Defendants.

72. Defendants made these affirmations of quality and safety through product labeling, packaging, and marketing materials. Defendants reinforced and relied upon these warranties by advertising, displaying, and selling the Products to consumers, thereby making its own express representations of the Products safety and fitness.

73. Plaintiff and the Class Members fulfilled all conditions precedent to Defendants' liability under this contract, including purchasing the Products in reliance on Defendants' representations.

74. Defendants breached their express warranties because the Products were defective, prone to overheating, and presented a serious fire hazard contrary to their representations. The Products failed to conform to the express affirmations and promises made by the Defendants.

75. Plaintiff and Class Members would not have purchased the Products had they known the true nature of the risks, including the potential for fire hazards and injuries.

76. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members suffered and continue to suffer financial damages, injury, and economic losses. They are entitled to compensatory damages, attorneys fees, interest, and any other

relief deemed appropriate by the Court.

## COUNT III
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class and, alternatively, the Subclass)

77. Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

78. Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

79. Defendants are merchants engaged in the business of manufacturing, distributing, warranting, and/or selling the Products.

80. The Products are goods under the relevant laws, and at all times relevant, Defendants knew or had reason to know of the specific use for which these Products were purchased.

81. Defendants entered into agreements with retailers to distribute and sell the Products to consumers, including Plaintiff and Class Members, for personal and household use.

82. The implied warranty of merchantability, which applies to all sales of goods, means that Defendants warranted that the Products were fit for their ordinary Purpose-namely, to safely provide power to tools without posing unreasonable risks of harm.

83. However, Defendants breached the implied warranty of merchantability because the Products were defective, not fit for their intended use, and posed a risk of overheating and catching fire. As a result, they were unfit for their ordinary purpose of safely cutting grass.

84. This implied warranty applies to all purchasers of the Products, including Plaintiff and Class Members, because they reasonably relied on Defendants' status as merchants and sellers of safe, functional goods.

85. Privity of contract is not required, as Plaintiff and Class Members are the intended beneficiaries of Defendants' implied warranties. Defendants' warranties were created for the benefit of consumers,

including Plaintiff and Class Members.

86. Defendants were on notice of the defects through consumer complaints, reports of overheating incidents, and the recall of the Products, yet failed to address these defects before selling the Products to consumers.

87. Had Plaintiff, Class Members, and other consumers known that the Products posed an overheating and fire risk, they would not have purchased them or would have paid significantly less.

88. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class Members suffered and continue to suffer financial harm, injury, and other damages. Plaintiff and the Classes seek all available damages, including compensatory damages, attorneys' fees, interest, and any other relief deemed appropriate by the Court.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

89. Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

90. Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

91. Defendants are merchants engaged in the sale of goods, including the defective Mowers, to Plaintiff and the Classes.

92. There was a sale of goods from Defendants to Plaintiff and Class Members, thereby establishing a commercial relationship between Defendants and consumers.

93. As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendants each impliedly warranted that the Products were merchantable and fit for their intended use.

94. However, contrary to these representations, the Products were defective and unfit for their

ordinary use, as they posed a significant risk of overheating and catching fire, which was not disclosed to consumers at the time of sale.

95.     Defendants breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose.

96.     Defendants were on notice of this breach, as they were aware of adverse health and safety risks caused by overheating and potential ignition yet failed to take corrective action before selling the Products.

97.     Plaintiff and Class Members did not receive the goods as bargained for, as the Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

98.     Plaintiff and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendants' expertise and reputation as merchants when purchasing the Products.

99.     Plaintiff and Class Members did not alter the Products, and they used them in the ordinary and intended manner.

100.   The Products were defective at the time they left the exclusive control of Defendants, meaning that Defendants bear responsibility for the defect.

101.   The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

102.   Plaintiff and Class Members purchased the Products without knowing of the latent defect, which was undiscoverable at the time of purchase but existed when the Products left Defendants' control.

103.   As a direct and proximate result of the defective Products, Plaintiff and Class Members

suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

104.    Defendants attempted to limit or disclaim their implied warranties, but any such disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

105.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT V
## FRAUDULENT CONCEALMENT
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

106.    Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

107.    Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

108.    Defendants had a duty to disclose material facts to Plaintiff and Class Members given their relationship as contracting parties and intended users of the Products.

109.    Defendants had superior knowledge about the defective nature of the product at issue, particularly the risk of overheating and catching fire, which made them unfit for ordinary use.

110.    During this time, Plaintiff and Class Members were using the Products without knowing of these fire risks, reasonably believing that the Products were safe for use.

111.    Defendants knew or should have known about the defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the defect, and either knew

or should have known about the risk, particularly if the recall had already been issued.

112. Defendants failed to disclose these material facts with the intent to induce consumers into purchasing the Products, despite the latent defect. This failure constitutes fraudulent concealment, as Defendants intentionally withheld critical safety information that, if disclosed, would have affected consumer purchasing decisions.

113. Plaintiff and Class Members reasonably relied on Defendants' failure to disclose, believing that the Products were safe when, in fact, they were not.

114. Had Plaintiff and Class Members known the true risks, they would not have purchased the Products or would have paid significantly less.

115. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff and Class Members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

116. Because Defendants acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendants for knowingly concealing critical safety information from consumers.

## COUNT VI
## STRICT LIABILITY – FAILURE TO WARN
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

117. Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

118. Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

119. Defendants had a duty to warn Plaintiff and Class Members about the Defect and the true risks associated with the Products.

120. As the manufacturer, Defendants were in a superior position to know about the defective Products and their dangerous propensity to overheat and catch fire. However, Defendants failed to warn consumers, retailers, and regulatory agencies about the risks when it had the opportunity to do so.

121. Defendants failed to provide adequate warnings regarding the risks of the Products before or at the time of sale, particularly if it continued selling the Products despite knowledge of the recall or other safety concerns.

122. Defendants had access to critical safety information regarding the fire hazards associated with the Products, yet failed to warn Plaintiff and Class Members, leaving them unaware of the dangers.

123. Despite knowing the risks, Defendants did not strengthen their warnings or provide adequate safety disclosures before selling the Products. Instead, Defendants actively concealed or ignored the need for stronger warnings, prioritizing sales over consumer safety.

124. Plaintiff and Class Members would not have purchased, chosen, or paid for the Products had they known of the risk of overheating and fire. Because Defendants failed to provide proper warnings, consumers were deprived of their right to make an informed purchasing decision.

125. The Defect proximately caused Plaintiff's and Class Members' damages, as they purchased and used a Product that posed an unreasonable risk of harm without their knowledge.

126. The Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT VII
## STRICT LIABILITY – DESIGN DEFECT
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

127.    Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully

herein.

128.    Plaintiff brings this claim against Defendants on behalf of himself and the other members

of the Nationwide Class and, alternatively, the Subclass (the "Classes").

129.    The design of the recalled Ryobi Mowers was defective and unreasonably dangerous,

making the Products unsafe for consumer use.

130.    The risk of overheating and igniting into flames while Plaintiff and Class Members used

the Products caused exposure to harmful materials and posed a serious risk of injury or

property damage.

131.    The design defect rendered the Products not reasonably fit, suitable, or safe for their

intended purpose, violating consumer safety expectations.

132.    The risk of fire and overheating outweighed the benefits of the Products, making them

unreasonably dangerous to consumers.

133.    There were alternative, safer Mower designs available, including other Mowers that did not

overheat or pose a similar fire risk, meaning Defendants had the ability to manufacture a

safer product but failed to do so.

134.    Defendants could have implemented safer design modifications that would have reduced or

eliminated the fire risk, such as improved thermal management systems, enhanced safety

circuits, or better casing materials, but failed to do so.

135.    Because the Products were unreasonably unsafe and did not perform as an ordinary

consumer would expect, they should not have been sold to consumers.

136. Defendants are strictly liable for selling the defective Product, as strict liability applies to all entities in the chain of distribution.

137. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

**COUNT VIII**
**NEGLIGENT FAILURE TO WARN**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

138. Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

139. Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

140. Defendants owed Plaintiff and Class Members a duty of care to warn of any risks associated with the Products.

141. Defendants knew or should have known that the defective product posed a significant risk of overheating and catching fire but failed to warn Plaintiff and Class Members.

142. Defendants had a duty to warn consumers if it had knowledge or reason to know about the defect including through prior consumer complaints, product recalls, or other safety notices" but failed to provide adequate warnings before or at the time of sale.

143. Plaintiff and Class Members had no way of knowing about the Product's latent defect, as an ordinary consumer would not expect the Product to catch fire under normal use.

144. Defendants' breach of their duty to warn caused Plaintiff and Class Members to suffer economic damages and physical injuries, including the risk of burns, smoke inhalation, and property damage.

20

145. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees available under law.

## COUNT IX
## NEGLIGENT DESIGN DEFECT
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

146. Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

147. Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Subclass (the "Classes").

148. Defendants owed Plaintiff and Class Members a duty of care to design, manufacture, and sell Products that were safe for their intended use.

149. The design of the recalled Ryobi 40-Volt Brushless 21" Cordless Walk-Behind Mowers was defective and unreasonably dangerous, causing exposure to fire, smoke, and the risk of severe injury or property damage.

150. The design of the Products rendered them unfit, unsuitable, and unsafe for their intended purpose, as the risk of overheating and catching fire far outweighed any benefits of the Product.

151. There were alternative, safer Mower designs available, including, by way of one example, other push-on connectors that did not overheat or pose similar fire risks, meaning Defendants could have implemented a safer design but failed to do so.

152. Defendants had access to industry knowledge, safety reports, and consumer complaints that should have alerted them to the defective nature of the Products.

153. Defendants were negligent in selling the defective Products, as they either knew or should

have known that the design was unreasonably dangerous, particularly if the recall had been issued or customer complaints had been received before further sales.

154. The negligent design of the Product was the proximate cause of Plaintiff's and Class Members' damages, as it posed an inherent and foreseeable risk of harm that Defendants failed to address.

155. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT X
## NEGLIGENCE

156. Plaintiff incorporates the allegations set forth in Paragraphs 1-60 as though set forth fully herein.

157. Plaintiff brings this claim against Defendants on behalf of himself and the other members of the Nationwide Class and, alternatively, the Sub-class (the "Classes").

158. Defendants owed a duty of care to consumers to design, manufacture, distribute, and sell products that were reasonably safe for their intended use.

159. Defendants breached this duty by producing and selling a product that was defective, unreasonably dangerous, and unfit for its intended purpose. The model numbers identified in the recall have a push-on connector inside the powerhead that can overheat, posing a fire hazard.

160. Defendants failed to properly design and test the product to ensure its safety before placing it into the stream of commerce, and negligently sold the product without proper warnings, quality assurance measures, or recalls, despite the known risks.

161. Defendants knew or should have known that the Mowers had a significant risk of

overheating yet failed to take reasonable steps to prevent foreseeable harm to consumers.

162.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered economic damages, injuries, and deprivation of the benefit of the bargain, as the product did not perform as reasonably expected and was unsafe for use.

163.    Further, Defendants' negligence directly caused harm to Plaintiff and Class Members, as it was foreseeable that a poorly designed and untested Mower would overheat, catch fire, and cause injury. It was also foreseeable that consumers would lose the benefit of their purchase if they received a defective and worthless product.

164.    Plaintiff suffered damages in an amount to be determined at trial and Plaintiff is entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully request that the Court enter judgment in his favor and against the Defendants as follows:

A.    For an order certifying the class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B.    For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper;

H.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.    An order providing for all other such equitable relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 19, 2025                    Respectfully submitted,

By: */s/ Stuart A. Carpey*
**CARPEY LAW, P.C.**
Stuart A. Carpey
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
Tel: 610-834-6030
Fax: 610-825-7579
scarpey@carpeylaw.com
*Attorneys for Plaintiff and Putative Class*