IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN LILLY<br>*Individually and on Behalf of All Others Similarly Situated*<br><br>v.<br><br>RYOBI TECHNOLOGIES, INC.; TTI OUTDOOR POWER EQUIPMENT, INC. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>No. 25-939 |

**MEMORANDUM**

**Judge Juan R. Sánchez** **August 13, 2026**

Plaintiff Justin Lilly brings this class action against Defendants Ryobi Technologies and TTI Outdoor Power Equipment, Inc.[1] (collectively "TTI"), alleging various tort and contract claims related to an allegedly defective lawnmower. TTI moves to dismiss Lilly's complaint for lack of personal jurisdiction and improper venue. Because Pennsylvania's consent-by-registration law serves as the main basis for personal jurisdiction in this case, TTI also challenges the law on the ground that it violates the Dormant Commerce Clause of the Constitution. TTI additionally seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) because Lilly has failed to state a claim under Pennsylvania law. The Court finds it has personal jurisdiction over TTI, venue is proper in this district, and TTI's constitutional challenge fails at this stage. As to TTI's Rule 12(b)(6) motion, the Court has identified a choice-of-law issue unaddressed by the parties. In resolving this issue, the Court finds Louisiana, not Pennsylvania, law applies to Lilly's claims. Under Louisiana law, all of Lilly's claims except those for breach of implied warranty will be dismissed for failure to state a claim.

---

[1] TTI states: "Ryobi Technologies, Inc., ('RTI') merged into One World Technologies, Inc. (n/k/a TTI Consumer Power Tools, Inc.) ('[TTI]'). For purposes of the claims in this lawsuit, RTI no longer exists. As part of this merger, [TTI] assumed all the assets and liabilities of RTI." TTI's Mem. Supp. Mot. Dismiss 6 n.1, Dkt. No. 16-2.

**BACKGROUND**

TTI, a Delaware corporation with its principal place of business in South Carolina, manufactures and distributes power tools including, the RYOBI 40-Volt Brushless 21” Cordless Walk-Behind Mower. Compl. ¶¶ 2, 4, 7, 23, Dkt. No. 1. Upon receiving reports that these mowers were overheating and catching fire, TTI issued a recall and offered all customers a free replacement. *Id.* ¶¶ 4-6, 11, 29. Lilly, a citizen and resident of Baton Rouge, Louisiana, purchased one of these mowers from a Home Depot there. *Id.* ¶¶ 21, 31. He later “experienced overheating and power loss to his [mower] during the course of its use.” *Id.* ¶ 33. He did not suffer personal injury or property damage beyond damage to the mower itself, which he still owns. *Id.* ¶ 32.

Lilly filed this class action complaint against TTI, alleging unjust enrichment, breach of express warranty, breach of implied warranty, breach of implied warranty of merchantability, fraudulent concealment, strict liability failure to warn, strict liability design defect, negligent failure to warn, negligent design defect, and negligence. Dkt. No. 1. On April 17, 2025, TTI filed a motion to dismiss and filed a notice of its constitutional challenge to Pennsylvania’s consent-by-registration statute. Dkt. Nos. 16 & 17. After briefing on the motion was complete, the Court certified to the Pennsylvania Attorney General (“PAG”) that a Pennsylvania statute has been questioned, as required by Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403. Dkt. No. 30. On May 28, 2026, the PAG represented that it would not intervene in this case.[2] The Court held oral argument on TTI’s motion on June 30, 2026. Dkt. No. 32.

[2] In its response, the PAG took the position that intervention is premature because courts should generally address issues of personal jurisdiction before novel constitutional questions. While the proposition is correct, the constitutional issue here concerns the constitutionality of the statute that supplies the basis for personal jurisdiction over this matter. As such, the time to intervene would be now, before the Court renders a decision on the constitutional question. Regardless, the PAG is not obligated to intervene, and the Court has fulfilled its certification obligations.

**STANDARD**

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's jurisdiction over the moving defendants. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id*. (citation omitted). "Unlike a Rule 12(b)(6) motion, the Court's review of a Rule 12(b)(2) motion is not limited to the face of the pleadings and the Court may rely on sworn affidavits submitted by the parties or other competent evidence that supports jurisdiction." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463 (E.D. Pa. 2019) (citing *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990)).

A party may file a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). The moving defendant bears the burden of proving venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982). Venue is proper in "a judicial district in which any defendant resides." 28 U.S.C. § 1391(b)(1). A defendant corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). Thus, in cases involving corporate defendants, the question of proper venue is coextensive with the existence of personal jurisdiction.

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 679). "It is well settled that to be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim." *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987).

**DISCUSSION**

TTI moves to dismiss Lilly's complaint for lack of personal jurisdiction, improper venue, and failure to state a claim. The Court will first explain why it has personal jurisdiction over TTI and why venue is proper in this district before addressing why TTI's Dormant Commerce Clause challenge fails.[3] The Court will next address whether Lilly has stated plausible claims for relief by first explaining why Louisiana law applies under the applicable choice-of-law analysis and then addressing which of Lilly's claims survive under that law.

Turning first to TTI's challenges to personal jurisdiction and venue, the Court rejects TTI's arguments because it consented to personal jurisdiction in Pennsylvania by registering to do business in the Commonwealth.[4] Personal jurisdiction can be satisfied in three ways: general

---

[3] Courts should "avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. N.W. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). But the Court must address TTI's constitutional challenge here because it cannot dismiss this case now.

[4] Because venue for corporate defendants is proper in any judicial district in which they are subject to personal jurisdiction at the time the suit is brought, the same analysis applies to the personal jurisdiction and venue challenges.

jurisdiction, specific jurisdiction, or consent to jurisdiction. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137-39 (2023). In class action cases, the personal-jurisdiction analysis focuses on the defendant, the forum, and the named plaintiff. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 375 (3d Cir. 2022). So, the Court will focus its inquiry on TTI, Pennsylvania, and Lilly.

TTI is not subject to general or specific personal jurisdiction in this Court in this case.[5] But TTI has consented to jurisdiction in this case by registering to do business here. Pennsylvania law provides that an out-of-state corporation "may not do business in this Commonwealth until it registers" itself. 15 Pa. Cons. Stat. § 411(a). "Pennsylvania law is explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations." *Mallory*, 600 U.S. at 134 (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)). Under this system, out-of-state companies must register in Pennsylvania and by extension consent to general personal jurisdiction here. This is what happened to TTI. TTI does business in Pennsylvania, so it registered and voluntarily consented to general jurisdiction here.[6] This Court has personal jurisdiction over TTI on this basis.

---

[5] General personal jurisdiction exists where a corporation is at home. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). A corporation is at home in its place of incorporation and headquarters. *Id.* The Supreme Court has indicated a company can be subject to general jurisdiction outside of these two locations, but such exceptions are rare. *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 413 (2017) (noting an exception when "war had forced the . . . corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio"). TTI is incorporated in Delaware and headquartered in South Carolina. As such, TTI is not at home in Pennsylvania, and the Court cannot exercise general jurisdiction over it.

For specific personal jurisdiction to apply, a company must have enough minimum contacts with the state, and the lawsuit must arise out of or relate to those contacts. *Ford*, 592 U.S. at 359-60. TTI does advertise, ship, and sell its products in Pennsylvania. But Lilly's claims do not arise out of those actions. He bought and used TTI's product in Louisiana. So, his claims do not arise out of TTI's contacts with Pennsylvania, and specific jurisdiction over this case does not exist in this Commonwealth.

[6] At oral argument, TTI represented that it had likely been registered in Pennsylvania since 2004 but could not provide an exact date.

TTI attempts to avoid this result by alleging Pennsylvania's consent-by-registration jurisdiction law violates the Dormant Commerce Clause. It makes this argument by relying almost exclusively on a concurrence by Justice Alito in *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122. This argument is not persuasive. The Court will explain why by first addressing Justice Alito's concurrence and then conducting its own Dormant Commerce Clause analysis regarding whether Pennsylvania's law is discriminatory or substantially burdens interstate commerce.

In *Mallory*, the Supreme Court found Pennsylvania's consent-by-registration statute constitutional under the Due Process Clause. *Id.* at 134-36. Justice Alito wrote a concurrence which no other justice joined. *Id.* at 149 (Alito, J., concurring in part). He agreed the law does not violate due process but indicated he believes the statute likely violates the Dormant Commerce Clause. *Id.* at 160. He stated Pennsylvania's consent-by-registration law discriminates against out-of-state companies because its practical effect is to disadvantage out-of-state companies to the benefit of in-state competitors. *Id.* at 161 n.7. He argues the effect of the law is to force out-of-state companies to increase their exposure to suits on all claims to access Pennsylvania's market while Pennsylvania companies generally face no reciprocal burden for expanding operations into another State. *Id.* He alternatively states the Pennsylvania law fails to identify a legitimate local interest that does not create burdens to interstate commerce that are clearly excessive in relation to the putative local benefits. *Id.* at 161-62. Meanwhile, he cannot identify any legitimate local interest in creating such a system. *Id.* at 162-63. Nevertheless, Justice Alito concurred in the majority opinion because the Dormant Commerce Clause argument was not properly before the Supreme Court, leaving the issue for the state courts to address on remand.[7] *Id.* at 163. To date,

[7] On remand, the Pennsylvania courts summarily denied the Dormant Commerce Clause challenges. Petition for Writ of Cert. at 5-6, *Norfolk S. Ry. Co. v. Mallory*, No. 25-1208 (U.S. Apr. 17, 2026). A new petition for a writ of certiorari is pending. *See generally id.*

many litigants have challenged Pennsylvania's consent-by-registration law under the Dormant Commerce Clause, but no court has found the law unconstitutional.[8]

Almost all TTI's arguments on the constitutionality of Pennsylvania's registration statute are based on Justice Alito's *Mallory* concurrence. While the Court will address the substance of TTI's position, and by extension Justice Alito's argument, it is worth pointing out a few flaws in TTI's reliance on this concurrence. First, the concurrence was authored solely by Justice Alito and joined by no other justices. In fact, no other opinion in *Mallory* directly addressed the Dormant Commerce Clause beyond the majority expressly declining to take any position on the issue. *Mallory*, 600 U.S. at 127 n.3 ("The Pennsylvania Supreme Court did not address Norfolk Southern's alternative argument that Pennsylvania's statutory scheme as applied here violates this Court's dormant Commerce Clause doctrine. Nor did we grant review to consider that question. Accordingly, any argument along those lines remains for consideration on remand." (internal citation omitted)). As such, the concurrence has no precedential value.

---

[8] *Hegna v. Smitty's Supply, Inc.*, No. 16-3613, 2017 WL 2563231, at *5 (E.D. Pa. June 13, 2017) ("[W]e conclude that § 5301 does not violate the dormant Commerce Clause as it is applied in this case."); *Jasinski v. Kia Am., Inc.*, No. 25-CV-1234, 2025 WL 3047883, at *6 (E.D. Pa. Oct. 31, 2025) ("The Court is not persuaded . . . that Pennsylvania's statutory framework violates the Dormant Commerce Clause to the extent that it establishes personal jurisdiction based on registration to do business."); *Blade v. Sig Sauer, Inc.*, No. 25-6645, 2026 WL 625093, at *7 (E.D. Pa. Mar. 5, 2026) ("[E]xercising general personal jurisdiction . . . based on [defendant]'s registration as an out-of-state corporation in a case brought by at least two Pennsylvanians, does not offend the Dormant Commerce Clause."); *Walker v. Audubon Cos., LLC*, No. 25-CV-764, 2026 WL 737187, at *5 (W.D. Pa. Mar. 16, 2026) ("As applied to the facts alleged in the Complaint and the record before the Court, Pennsylvania's general personal jurisdiction statute does not violate the dormant Commerce Clause."); *Fry v. Am. Honda Motor Co. Inc.*, No. 23-CV-01782, 2026 WL 801428, at *11 (M.D. Pa. Mar. 23, 2026) ("[T]he Court rejects Honda's argument that, per Justice Alito's concurring opinion in *Mallory*, Pennsylvania's consent-by-registration statute violates the Dormant Commerce Clause doctrine"). These courts, however, did not need to directly address the substance of Justice Alito's concurrence.

Second, Justice Alito's concurrence does not purport to perform a comprehensive analysis of whether Pennsylvania's law actually violates the Dormant Commerce Clause. His analysis of whether the law discriminates against out-of-state companies is confined to one sentence in a footnote. *See Mallory*, 600 U.S. at 161 & n.7. He then identifies the burden on interstate commerce solely using decades-old precedent involving different types of statutes and general theoretical arguments. *Id.* at 161-63. He cites no specific evidence or fact-finding regarding Pennsylvania's statute or its impact on interstate commerce. *Id.* Indeed, he does not actually conclude Pennsylvania's statute violates the Dormant Commerce Clause but only states "there is a good prospect" of a constitutional violation. *Id.* at 160. All these factors make total reliance on this *Mallory* concurrence problematic.

So instead of just relying on Justice Alito's concurrence as TTI does, this Court must conduct its own Dormant Commerce Clause analysis to determine whether Pennsylvania's law violates the Constitution. And after conducting this analysis, the Court finds TTI has failed to prove that Pennsylvania's law is unconstitutional at this stage because it has not demonstrated that the law discriminates against out-of-state businesses or substantially burdens interstate commerce.

While TTI's motion is not explicit on what type of challenge it is bringing, its counsel clarified at oral argument that it is bringing an as-applied challenge.[9] "[A]n as-applied attack . . . does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States*

[9] Regardless, a facial challenge would fail. "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). It is clear Pennsylvania's statute has constitutional uses. *See, e.g.*, *Mallory*, 600 U.S. at 162 (Alito, J., concurring in part) ("A State certainly has a legitimate interest in regulating activities conducted within its borders, which may include providing a forum to redress harms that occurred within the State." (internal citations and quotation marks omitted)).

*v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (citation omitted). To succeed in its as-applied challenge, TTI must prove Pennsylvania's consent-by-registration statute violates the Dormant Commerce Clause when applied to TTI in this case.

"The Commerce Clause empowers Congress '[t]o regulate Commerce . . . among the several States,' and although its terms do not expressly restrain 'the several States' in any way, [the Supreme Court] ha[s] sensed a negative implication in the provision since the early days." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008) (citations omitted). "Under the resulting . . . dormant Commerce Clause analysis, [a court] ask[s] whether a challenged law discriminates against interstate commerce." *Id.* at 338. "A discriminatory law is virtually per se invalid, and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives . . . ." *Id.* (internal citations and quotation marks omitted). "[I]f the state regulation does not discriminate against interstate commerce, but 'regulates even-handedly' and merely 'incidentally' burdens it, the regulation will be upheld unless the burden is 'clearly excessive in relation to the putative local benefits.'" *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 211 (3d Cir. 2002) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This standard is referred to as the *Pike* balancing test.

In deciding if the Pennsylvania consent-by-registration statute is discriminatory, the Court must first determine whether it "discriminates against interstate commerce 'either on its face or in practical effect.'" *Id.* at 210 (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)). TTI does not claim that Pennsylvania's law facially discriminates against interstate commerce.[10] Instead, it

---

[10] Nor could it. The statute facially applies to both in-state and out-of-state companies. *N.J. Staffing All. v. Fais*, 110 F.4th 201, 207 (3d Cir. 2024) ("[T]he Act applies equally to in-state and out-of-state . . . firms . . . . [N]othing in the Act discriminates against out-of-state firms . . . .").

alleges the practical effect of the statute is "that out-of-state entities . . . are treated differently (and worse) than in-state entities for purposes of general jurisdiction and Pennsylvania-market access." TTI's Mem. Supp. Mot. Dismiss 12. This is because "[t]o access the Pennsylvania market, TTI must subject itself to Pennsylvania's jurisdiction over any lawsuit in Pennsylvania, while Pennsylvania's . . . companies face no such reciprocal burden."[11] *Id.* at 12.

But the practical effects test is not concerned solely with differential treatment between states. "[D]iscrimination . . . means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (citation omitted). As the Supreme Court has recently clarified, the test is whether a "law's practical effects may also disclose the presence of a discriminatory purpose" against out-of-state businesses. *Nat'l Pork Producers*, 598 U.S. at 377. The Third Circuit follows this formulation, finding "the 'discriminatory effect' cases are best regarded as cases of purposeful discrimination." *Norfolk S. Corp. v. Oberly*, 822 F.2d 388, 400 (3d Cir. 1987). So it is not enough that the practical effect of the Pennsylvania law is the lack of a reciprocal burden, but the effect must disclose the presence of the state's discriminatory purpose to benefit in-state companies at the expense of out-of-state ones. Thus, the Court must look at the context in which Pennsylvania's consent-by-registration laws were created.

The context shows Pennsylvania's laws do not have any discriminatory purpose. While Pennsylvania's registration statute is often regarded as unique, Pennsylvania is not alone in pursuing this approach. From the mid-1800s to the early-1900s, every state had some form of consent-by-registration system like Pennsylvania's. *Mallory*, 600 U.S. at 130 ("[B]oth before and

---

[11] As will be explained below, TTI does not need to subject itself to Pennsylvania's jurisdiction to access the Commonwealth's market.

after the Fourteenth Amendment's ratification, [state lawmakers] adopted statutes requiring out-of-state corporations to consent to in-state suits in exchange for the rights to exploit the local market and to receive the full range of benefits enjoyed by in-state corporations."). *See generally* Statutory Appendix to Brief for the Petitioner, *Mallory*, 600 U.S. 122 (listing every statute and its text). These types of laws eventually became disfavored. *Mallory*, 600 U.S. at 130 n.7 ("[T]oday, few States continue to employ consent statutes like Pennsylvania's."). But the universal existence of these laws indicates that the Pennsylvania legislature was not attempting to fulfill some type of discriminatory purpose. Indeed, during the period when these statutes were in effect, there was no discriminatory effect since all the states had these types of laws.

The modern version of Pennsylvania's statute was passed in the late 1970s and early 1980s. 42 Pa. Cons. Stat. § 5301. Again, during this period, consent-by-registration laws were common in most of Pennsylvania's neighboring states.[12] Thus, the effect of this law would have been modest at best. Even today, at least five other states have similar consent-by-registration laws: Kansas, Georgia, Minnesota, Connecticut, and North Carolina.[13] Contrary to TTI's statement,

---

12 *See Sternberg v. O'Neil*, 550 A.2d 1105, 1116 (Del. 1988) (finding consent-by-registration jurisdiction in Delaware), *abrogated by Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016); *Allied-Signal Inc. v. Purex Indus., Inc.*, 576 A.2d 942, 945 (N.J. Super. Ct. App. Div. 1990) (same for New Jersey), *abrogated by Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, 164 A.3d 435 (N.J. Super. Ct. App. Div. 2017); *Pohlers v. Exeter Mfg. Co.*, 293 N.Y. 274, 280 (N.Y. App. Div. 1944) (same for New York), *abrogated by Aybar v. Aybar*, 177 N.E.3d 1257 (N.Y. 2021).

13 *See Am. Food & Vending Corp. v. Goodyear Tire & Rubber Co.*, No. 24-02108, 2025 WL 2770651 (D. Kan. Sep. 29, 2025) (rejecting a Dormant Commerce Clause argument against Kansas's consent-by-registration law); *Sloan v. Burist*, No. 22-CV-76, 2023 WL 7309476, at *6 (S.D. Ga. Nov. 6, 2023) (same as to Georgia law); *Shawgo v. Counter Brands, LLC*, No. 24-cv-0556, 2025 WL 965096, at *4 (D. Minn. Mar. 31, 2025) (describing Minnesota's consent-by-registration system); *O'Leary v. Brook Haven Props., LLC*, No. X07-HHD-CV-23-6177279-S, 2025 WL 2701908, at *8 (Conn. Super. Ct. Sep. 16, 2025) (same as to Connecticut law); *PDII, LLC v. Sky Aircraft Maint., LLC*, 925 S.E.2d 28, 36 (N.C. Ct. App. 2025) (same as to North Carolina law), *stayed*, 924 S.E.2d 34 (N.C. 2026).

Pennsylvania companies currently do face a reciprocal burden in these states. This fact weakens any allegation that the effects of the statute demonstrate a discriminatory purpose.

TTI's proposed reciprocal burden test also creates a line-drawing issue. Under this theory, Pennsylvania's consent-by-registration scheme would presumably not be discriminatory under the Dormant Commerce Clause if all fifty states have the same type of statute. In this situation, companies from every state and Pennsylvania companies would face the same reciprocal burden. But how many states would need to have this type of registration statute for the practical effect to not show a discriminatory purpose? Ten? Twenty-five? Forty-nine? The line-drawing issue becomes untenable. For all the reasons explained above, TTI has failed to show Pennsylvania's consent-by-registration laws disclose a discriminatory purpose.

But TTI has another path to bring a Dormant Commerce Clause challenge. Under the *Pike* test, "the law 'will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" *Davis*, 553 U.S. at 339 (citing *Pike*, 397 U.S. at 142). The Court, however, finds TTI's challenge also fails under this test because TTI has not proved the consent-by-registration law imposes a substantial burden on interstate commerce.

The first step of the *Pike* test is to determine whether the "challenged law imposes 'substantial burdens' on interstate commerce before a court may assess the law's competing benefits or weigh the two sides against each other." *Nat'l Pork Producers*, 598 U.S. at 383 (plurality); *id.* at 395 (Roberts, C.J., concurring in part and dissenting in part) (agreeing the

---

Additionally, many other states had consent-by-registration laws before the Supreme Court's decision in *Daimler AG v. Bauman*, 671 U.S. 117 (2014), but state courts struck those laws down after that case was decided on Due Process grounds. Will Lattimore, *"Consent by Registration" After* Mallory*—a Fifty State Summary*, 12 Belmont L. Rev. 83, 90-99 (2024). After *Mallory*, these states may revive those systems since the Supreme Court has found these types of laws are constitutional. *Id.* at 96-100. So, there may soon be even more states that have or will have valid registration jurisdiction systems. *Id.* at 84-85 (identifying these states).

challenger must first show a substantial burden to interstate commerce but disagreeing whether plaintiffs had done so). TTI fails at this step because it has not presented sufficient evidence or argument that Pennsylvania's law substantially burdens interstate commerce.

TTI does not present any evidence that Pennsylvania's law substantially burdens interstate commerce. It cites Justice Alito's concurrence but that concurrence also does not provide any evidence of the burden.[14] This lack of evidence in the concurrence makes sense in *Mallory* because the Dormant Commerce Clause issue was not properly presented to the Supreme Court.

Actual Dormant Commerce Clause challenges, however, must be analyzed on a case-by-case basis. *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994) ("[O]ur [Dormant Commerce Clause] cases have eschewed formalism for a sensitive, case-by-case analysis of purposes and effects."). Indeed, "an as-applied challenge requires the development of a factual record for the court to consider, addressing 'whether a statute is unconstitutional on the facts of a particular case or to a particular party.'" *Sixth Angel Shepherd Rescue Inc. v. Pa. SPCA*, No. 10-3101, 2011 WL 605697, at *7 (E.D. Pa. Feb. 15, 2011) (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)) (finding a Dormant Commerce Clause as-applied challenge to a statute is premature in the "absence of any factual record"). Failure to present evidence of interstate burden can doom a Dormant Commerce Clause challenge. *See, e.g.*, *Cloverland-Green*, 298 F.3d at 218-19 ("But [the challengers] failed to present any evidence that

[14] Justice Alito refers to generalized concerns about "externalizing costs" and the theoretical impact consent-by-registration laws have on small businesses. *Mallory*, 600 U.S. at 161-62 (Alito, J., concurring in part). He also cites various cases to argue the burden is significant. *Id.* at 161 (citing *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 893 (1988); *Davis v. Farmers' Co-op. Equity Co.*, 262 U.S. 312, 315-17 (1923); *Mich. Central R. Co. v. Mix*, 278 U.S. 492, 495 (1929); *Denver & Rio Grande W. R. Co. v. Terte*, 284 U.S. 284, 287 (1932); *Atchison, T. & S. F. R.Y. Co. v. Wells*, 265 U.S. 101, 103 (1924)). But he cites to no specific factual findings on Pennsylvania's law.

the retail price floors burden *interstate* commerce by harming out-of-state interests, and thus their dormant Commerce Clause argument fails."). Further, modern Dormant Commerce Clause decisions have relied on specific fact finding and evidence regarding the burdens of the challenged laws.[15] TTI has not provided any fact finding or evidence for this Court to determine whether Pennsylvania's consent-by-registration law substantially burdens interstate commerce.

In the absence of evidence, TTI frames the burden to itself, as an out-of-state company, as being placed the "Hobson's choice"[16] of being forced to "either (i) choose to maintain its defense against personal jurisdiction in Pennsylvania by refusing to register (and, therefore, potentially losing access to the Pennsylvania market); or (ii) register in Pennsylvania under compulsion and thereby impliedly consent to general jurisdiction for lawsuits arising anywhere." TTI's Mem. Supp. Mot. Dismiss 14. TTI supports this contention with one case: *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988).[17] *Bendix* involved an Ohio statute that tolled the statute of limitations on all claims against out-of-state corporations that had not designated an in-state agent for service of process. *Bendix*, 486 U.S. at 890. If a corporation appointed an agent for service of process, it would consent to general jurisdiction in Ohio. *Id.* The Supreme Court found this statutory system was a significant burden on interstate commerce. *Id.* at 892-93.

---

15 *See, e.g.*, *United Haulers*, 550 U.S. at 337 ("[Petitioners] submitted evidence that without the . . . laws and the associated $86–per–ton tipping fees, they could dispose of solid waste at out-of-state facilities for between $37 and $55 per ton . . . ."); *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 123 (1978) ("The [plaintiffs] introduced evidence indicating that their ownership of retail service stations has produced significant benefits for the consuming public.").

16 "A Hobson's choice is 'an apparently free choice when there is no real alternative' or 'the necessity of accepting one of two or more equally objectionable alternatives.'" *Blade*, 2026 WL 625093, at *8 n.76 (citing *Hobson's Choice*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/Hobson%27s%20choice (last visited March 4, 2026)).

17 Justice Alito also cites this case. *Mallory*, 600 U.S. at 161 (Alito, J., concurring in part).

But what the Supreme Court found to be a substantial burden on interstate commerce almost 40 years ago in another state with another type of statute involving completely different facts is unhelpful in determining whether Pennsylvania's statute imposes a substantial burden on interstate commerce. As a result, TTI's reliance on a concurrence and previous caselaw without evidence cannot sustain a successful Dormant Commerce Clause challenge.

Even accepting this "Hobson's choice" argument at face value, the Court does not find that Pennsylvania's law substantially burdens out-of-state commerce on the current record. While the language of Pennsylvania's statute provides "a foreign filing association or foreign limited liability partnership may not do business in this Commonwealth until it registers with the department under this chapter," the penalty for non-compliance does not prohibit a company from entering Pennsylvania's market. 15 Pa. Cons. Stat. Ann. § 411(b). "[N]ot registering to 'do business' seemingly has only one downside: the out-of-state corporation not registered here may not sue in Pennsylvania courts." *Blade*, 826 F. Supp. 3d at 632 (citing 15 Pa. Cons. Stat. Ann. § 411(b); 15 Pa. Cons. Stat. Ann. § 411 Committee Comment). Notably, an out-of-state corporation that has not registered can still defend against suits in the Commonwealth and presumably benefit from the same defenses an in-state company can assert. 15 Pa. Cons. Stat. Ann. § 411(b) ("The failure of a foreign filing association . . . to register to do business in this Commonwealth does not . . . preclude it from defending an action or proceeding in this Commonwealth."). So the burden on interstate commerce here is making an out-of-state corporation choose between having the ability to bring a lawsuit in Pennsylvania or losing that ability in exchange for consenting to jurisdiction.

What TTI calls a "Hobson's choice" is just the type of business choice that corporations face every day when dealing with different states' regulations. Businesses must frequently choose whether to incur costs and risks by entering a state's market and conforming with its sometimes-

unique laws or to forgo those costs by not entering that market or declining to follow its regulations. "State income tax laws lead some individuals and companies to relocate to other jurisdictions." *Nat'l Pork Producers*, 598 U.S. at 374. "Environmental laws often prove decisive when businesses choose where to manufacture their goods." *Id.* And companies like TTI must choose whether to comply with Pennsylvania's registration and jurisdiction law or forgo the ability to bring suits in Pennsylvania or access to its market. Being "forced" to make this choice is the reality of modern-day business in America and not a substantial burden on interstate commerce. TTI therefore has failed to prove Pennsylvania's laws impose a burden on interstate commerce.[18]

This Court will not invalidate a more-than-100-year-old statutory system based on theoretical burdens to interstate commerce and underdeveloped legal theories. The Court will therefore deny TTI's Rule 12(b)(2) and Rule 12(b)(3) motions and its Dormant Commerce Clause challenge. While TTI has failed to prove Pennsylvania's laws discriminate against or create a substantial burden on interstate commerce at this stage, it could provide sufficient evidence later. Accordingly, TTI may renew its Dormant Commerce Clause challenge at the summary judgment stage. But for now, this Court has personal jurisdiction over TTI, and venue is proper here.

The Court now turns to TTI's motion to dismiss for failure to state a claim. Both parties rely on Pennsylvania law in their briefing without undertaking any choice-of-law analysis. The Court, however, must conduct a choice-of-law analysis because the outcome dictates whether any of Lilly's claims survive. Using choice-of-law principles, this Court will apply Louisiana law. As a result, while most of Lilly's claims will be dismissed, his implied warranty claims survive.

---

[18] Because TTI has failed to demonstrate a substantial burden on interstate commerce, the Court does not need to balance the burden against the state's interest.

A federal court sitting in diversity applies state substantive law, as determined by the choice-of-law rules of the forum state. *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 140 (3d Cir. 2024) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941)). In Pennsylvania, courts examine whether competing states' laws are in conflict and then determine which state has a greater interest in the application of its law. *Budtel Assocs., LP v. Continental Cas. Co.*, 915 A.2d 640, 644-45 (Pa. Super. Ct. 2006). "In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interest underlying the particular issue before the court.'" *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970) (quoting *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964)).

Under step one of the choice-of-law analysis, the Court finds there is a true conflict here. The two competing laws in this case are Pennsylvania and Louisiana. If Pennsylvania law applies, all of Lilly's claims fail. If Louisiana law applies, then he can bring his implied warranty claims. Under Pennsylvania law, which adopts § 2-607 of the Uniform Commercial Code (UCC), a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 13 Pa. Cons. Stat. § 2607(c)(1). Courts have found a plaintiff must comply with this notice requirement to recover in a breach of warranty action.[19] *See, e.g.*, *Vanalt Elec. Constr. Inc. v. Selco Mfg. Corp.*, 233 F. App'x 105, 111 (3d Cir. 2007); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 682 (E.D. Pa. 2011); *Am. Fed'n of State Cnty. & Mun. Emps. v. Ortho-McNeil-Janssen Pharms., Inc.*, No. 08-CV-5904, 2010 WL 891150, at *7 (E.D. Pa. Mar. 11, 2010) (holding because "§ 2607(c) bars a buyer's recovery absent the

[19] Pennsylvania law however is unsettled on "what constitutes reasonable notice in the context of a class action." *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 26 n.17 (Pa. 2011).

buyer providing reasonable notification of the breach, it follows that a buyer must also plead . . . that it provided reasonable notification in order to state a viable claim for recovery"). Lilly did not provide any notification of the breach to TTI before bringing this suit. His warranty claims therefore would be barred under Pennsylvania law.

But if Louisiana law applies then the implied warranty claims survive. In Louisiana, warranty claims are brought under a redhibition action. *Easterling v. Royal Manufactured Hous., LLC*, 963 So. 2d 399, 405 (La. Ct. App. 2007) ("[A]ctions based on a breach of warranty against defects are to be brought in redhibition . . . ."). And Louisiana has not adopted § 2-607 of the UCC. *Ducote v. Whitney Nat'l Bank*, 212 So. 3d 729, 732 (La. Ct. App. 2017) ("Louisiana has enacted all of the Articles of the [UCC] except Article[] 2, pertaining to sales . . . ."), *writ denied*, 221 So. 3d 860 (La. 2017). The dismissal of the warranty claims under the UCC and Pennsylvania's pre-suit notice requirement is not possible if the Court applies Louisiana law.

Louisiana also requires a buyer to tender timely notice to a seller of a defect in the thing sold to give the seller an opportunity to make repairs. La. Civ. Code Ann. art. 2522 ("A buyer who fails to give that notice suffers diminution of the warranty to the extent the seller can show that the defect could have been repaired or that the repairs would have been less burdensome, had he received timely notice."). But "[s]uch notice is not required when the seller has actual knowledge of the existence of a redhibitory defect . . . ." *Decker v. Melton*, 253 So. 3d 856, 859 (La. Ct. App. 2018), *writ denied*, 257 So. 3d 190 (La. 2018). Lilly has alleged TTI knew about the fire risk its products pose but sold them anyway. Compl. ¶ 86. At this early motion to dismiss stage, this is enough to plausibly allege a claim and avoid the notice requirement. Because the two laws at issue would result in different outcomes in the case, there is a true conflict here.

After determining whether there is a true conflict between Pennsylvania and Louisiana law, the Court must next identify which state has the greater interest. Louisiana has a greater interest than Pennsylvania in this case. Lilly is a Louisiana resident who purchased the allegedly defective product in Louisiana, used it and suffered its alleged malfunction there. No relevant contacts occurred in Pennsylvania. Because Louisiana has a greater interest, its law applies here.

As just stated, Lilly has plausibly alleged a redhibition claim which includes his counts of breach of implied warranty. His other claims, however, fail. TTI argues that Lilly has failed to plead his fraud claim with particularity under Federal Rule of Civil Procedure 9(b). The Rule states "a party must state with particularity the circumstances constituting fraud or mistake" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), "a plaintiff must 'plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Pineda v. Lake Consumer Prods., Inc.*, 812 F. Supp. 3d 493, 507 (E.D. Pa. 2025) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). "[A] plaintiff alleging fraud must support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where, and how of the events at issue.'" *Lawton v. Wells Fargo Bank, N.A.*, No. 22-3294, 2023 WL 2539000, at *3 (E.D. Pa. Mar. 16, 2023) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). In his complaint, Lilly does not allege when, where, or how TTI perpetrated this fraud. Indeed, he does not even provide the date on which he purchased TTI's product. This fails to meet the heightened pleading standard of Rule 9(b).

Lilly also brings claims alleging breach of express warranty, strict liability failure to warn, strict liability design defect, negligent failure to warn, negligent design defect, and negligence.

"[T]heories of establishing that defendants' products are defective . . . based on negligence or strict liability . . . are not viable theories of recovery against a manufacturer" because "the Louisiana Product[s] Liability Act [(LPLA)] is the exclusive theory of recovery in Louisiana against a manufacturer." *Morial v. Smith & Wesson, Corp.*, No. 98-18578, 2000 WL 248364, at *12 (La. Civil Dist. Ct. Feb. 28, 2000) (collecting Louisiana Courts of Appeal cases). Additionally, "recovery for damage to the product itself . . . or loss of use of the product will normally not be compensable under the LPLA, because those items of damage properly are the subject of a claim in redhibition." *ExPert Riser Sols., LLC v. Techcrane Int'l, LLC*, 319 So. 3d 320, 326 (La. Ct. App. 2020). This doctrine applies here because Lilly has only alleged the product was defective and did not cause any harm to his person or property. So Lilly's other claims will be dismissed.[20]

**CONCLUSION**

Accordingly, TTI's motion to dismiss is granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[20] Lilly's express warranty claim also fails because he does not identify a specific stated warranty that induced him to buy and use the mower. *Reynolds v. Bordelon*, 172 So. 3d 607, 615 (La. 2015) ("We cannot accept a general alleged warranty for purposes of an express warranty claim. . . . [T]here must be a specified stated warranty, i.e., express.").

His unjust enrichment claim must also be dismissed because "pleading an action . . . in redhibition precludes a claim under unjust enrichment" and he has brought a redhibition claim for breach of implied warranty. *Marseilles Homeowners Condo. Ass'n v. Broadmoor, L.L.C.*, 111 So. 3d 1099, 1106 (La. Ct. App. 2013).